RDF Agent, LLC v Electric Red Ventures, LLC (2024 NY Slip Op 02384)

RDF Agent, LLC v Electric Red Ventures, LLC

2024 NY Slip Op 02384

Decided on May 02, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 02, 2024

Before: Manzanet-Daniels, J.P., Kern, Friedman, Rosado, O'Neill Levy, JJ. 

Index No. 656537/22 Appeal No. 2173-2174 Case No. 2022-03619, 2023-04647 

[*1]RDF Agent, LLC, Plaintiff-Respondent,
v
Electric Red Ventures, LLC, et al., Defendants-Appellants.

Herrick, Feinstein LLP, New York (Scott E. Mollen, of counsel) and Zeichner Ellman & Krause LLP, New York (Robert W. Ray of counsel), for appellants.
Hunton Andrews Kurth LLP, New York (Silvia N. Ostrower of counsel), for respondent.

Judgment, Supreme Court, New York County (Jennifer Schecter, J.), entered August 8, 2023, to the extent it awarded $3,397,093.14 in favor of plaintiff and against defendants, unanimously affirmed, with costs, and so much of the appeal from the judgment as challenged the order, same court and Justice, entered November 21, 2022, which refused to allow defendants to discontinue the second through fourth counterclaims without prejudice, unanimously dismissed, without costs, as taken by a nonaggrieved party. Appeal from order, same court and justice, entered on or about July 27, 2022, which denied defendants' motion to dismiss or stay this action in favor of an earlier-filed Texas action, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
Plaintiff and defendants entered into a preliminary term sheet, dated July 23, 2021, in contemplation of plaintiff's potentially lending defendants up to $230 million to finance a real estate development project in Arizona. The term sheet provides that it is not binding except for certain paragraphs, including the paragraph entitled "Exclusivity." Under the exclusivity provision of the term sheet, plaintiff had the "exclusive right" to provide the loan for the project "for a period of sixty . . . days following the later of (i) execution date hereof, and (ii) receipt of the expense deposit [to be made by defendants]." The 60-day exclusivity period would be "extended to the extent of any delays" attributable to defendants, or if defendants were "not prepared to close on the terms set forth herein," which terms included defendants' obligation to provide a specified amount of equity financing for the project. During the exclusivity period, defendants agreed "not to, directly or indirectly, solicit, make, accept, negotiate, entertain, or otherwise pursue or contact any other persons in respect of financing or any other transaction that may be an alternative to, or may interfere with, the transactions contemplated herein." The exclusivity provision specifies, as plaintiff's remedy for a breach by defendants, liquidated damages in the amount of $2.3 million, or one percent of the maximum amount of the contemplated loan, plus "all costs of collection, including attorney's fees and court costs."
It is undisputed that the exclusivity period went into effect on July 28, 2021, and that defendants were unable to secure the required amount of equity financing within the 60 days following that date, which ended on September 26, 2021. Although discussions between the parties continued after that date, defendants ultimately obtained financing from other lenders. In this action, plaintiff, contending that defendants breached the exclusivity provision by discussing potential financing with other lenders both before and after September 26, 2021, seeks to recover the liquidated damages of $2.3 million set forth by the exclusivity provision as the remedy for breach thereof. Supreme Court granted plaintiff's [*2]motion for summary judgment on this claim and, after further submissions, entered an award of attorney's fees and costs. Upon defendants' appeal from the ensuing judgment, we affirm.
Initially, upon defendants' appeal from the judgment, we decline to consider their challenge to the court's order, entered November 21, 2022, which granted plaintiff's motion to dismiss defendants' second, third and fourth counterclaims and denied defendants' cross motion to discontinue those counterclaims without prejudice. On appeal, defendants' sole contention with respect to this order is that they should have been allowed to discontinue their second through fourth counterclaims without prejudice. However, the trial court's refusal to allow defendants to discontinue certain counterclaims without prejudice did not necessarily affect the final judgment. Therefore, the appeal from the judgment does not bring up the order for review (CPLR 5501[a]). Although an order dismissing counterclaims necessarily affects the final judgment (see Strauss, 20 NY3d at 39, 42-43), defendants failed to oppose plaintiff's motion to dismiss. Therefore, they "effectively [were] not aggrieved by [that portion of] the resulting order, and thus [are] not permitted to appeal from it" (Liddle & Robinson, L.L.P. v Willman, 193 AD3d 549 [1st Dept 2021]). Accordingly, that part of their appeal is dismissed.
We now turn to the grant of summary judgment to plaintiff on its claim for breach of the exclusivity provision of the parties' term sheet. Defendants contend that the exclusivity provision is unenforceable because, under plaintiff's interpretation of that provision, their obligation survives indefinitely. This argument is unavailing. Unlike the contract in Haines v City of New York (41 NY2d 769 [1977]), which "provide[d] for no express duration" (id. at 772), the term sheet sets forth the duration of the exclusivity period. The extent of the period beyond September 26, 2021 was in defendants' control: if Electric Red Ventures, LLC was prepared to close on the terms set forth in the term sheet, or if defendants Monzer Hourani and Manfred Co., LC caused no delays, the exclusivity period would end. "Contracts which are vague as to their duration generally will not be construed to provide for perpetual performance" (Ketcham v Hall Syndicate, 37 Misc 2d 693, 700 [Sup Ct, NY County 1962], affd 19 AD2d 611 [1st Dept 1963]; see also id. at 699 ["a contract will not be construed to require perpetual performance where another construction is available"]).
Defendants also argue that the exclusivity provision lacks consideration and mutuality of obligation. This argument is unavailing. "Absent fraud or unconscionability, the adequacy of consideration is not a proper subject for judicial scrutiny" (Apfel v Prudential-Bache Sec., 81 NY2d 470, 476 [1993]). Here, the exclusivity provision requires plaintiff to proceed in good faith towards consummating the loan and to pursue in good faith the transaction [*3]contemplated by the term sheet. This is not "a promise that is so insubstantial as to impose no obligation" (Lend Lease [US] Constr. LMB Inc. v Zurich Am. Ins. Co., 28 NY3d 675, 684 [2017] [internal quotation marks omitted]). Thus, plaintiff provided consideration in exchange for defendants' promise not to solicit financing from anyone other than it during the exclusivity period. Further, mutuality of obligation "does not mean equality of obligation" (Dorman v Cohen, 66 AD2d 411, 415 [1st Dept 1979]). In any event, "an interpretation that renders a contract illusory and therefore unenforceable is disfavored and enforcement of a bargain is preferred, particularly where . . . the parties have expressed their intent to be contractually bound in a writing" (Credit Suisse First Boston v Utrecht-America Fin. Co., 80 AD3d 485, 488-489 [1st Dept 2011] [internal citations omitted]).
Contrary to defendants' contention, the exclusivity provision is not ambiguous. "[A] contract is ambiguous if the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings" (Goldman Sachs Group, Inc. v Almah, LLC, 85 AD3d 424, 425 [1st Dept 2011] [internal quotation marks omitted], lv dismissed 18 NY3d 877 [2012]). The term sheet simply does not say what defendants want it to say. "[A] contract is not rendered ambiguous just because one of the parties attaches a different, subjective meaning to one of its terms" (Moore v Kopel, 237 AD2d 124, 125 [1st Dept 1997]).
In view of the foregoing determinations, the motion court correctly determined that the record establishes, as a matter of law, that the period of defendants' obligation to deal exclusively with plaintiff under the exclusivity provision continued after September 26, 2021 (the date on which the initial 60-day period expired), because defendants, having been unable to raise the required amount of equity financing, were "not prepared to close on the terms set forth herein" on that date. Given that it is undisputed that defendants discussed possible financing with lenders other than plaintiff during the extended term of their obligations under the exclusivity provision, the court correctly granted plaintiff summary judgment on its claim for breach of the exclusivity provision.[FN1]
The term sheet's liquidated damages provision is enforceable, inasmuch as defendants did not satisfy their burden of "show[ing] that the stated liquidated damages are, in fact, a penalty" (172 Van Duzer Realty Corp. v Globe Alumni Student Assistance Assn., Inc., 24 NY3d 528, 536 [2014] [internal quotation marks omitted]; see also Addressing Sys. & Prods., Inc. v Friedman, 59 AD3d 359, 360 [1st Dept 2009]). The amount of liquidated damages is 1% of the maximum loan amount, which is less than the amount found enforcable in JMD Holding Corp. v Congress Fin. Corp. (4 NY3d 373, 377, 382-383 [2005] [early termination fee of 1-2% of maximum credit was not an unenforceable penalty[*4]]).
With respect to the July 2022 order, which is brought up for review upon the appeal from the judgment, we find that the court providently exercised its discretion in denying defendants' motion to dismiss this action pursuant to CPLR 3211(a)(4) (see Whitney v Whitney, 57 NY2d 731, 732 [1982]). "Although [the Texas] action was filed first, chronology is not dispositive, particularly since both actions [we]re at the earliest stages of litigation" when defendants moved to dismiss the New York lawsuit (IRX Therapeutics, Inc. v Landry, 150 AD3d 446, 447 [1st Dept 2017]; see also L-3 Communications Corp. v SafeNet, Inc., 45 AD3d 1, 9 [1st Dept 2007]). A "party who has reason to know a lawsuit will be brought against him" should not be allowed "to employ the expedient of filing an action to subject his opponent to a preferred forum . . ., especially where the earlier action seeks declaratory relief filed in apparent anticipation of the other . . . proceeding" (White Light Prods. v On The Scene Prods., 231 AD2d 90, 98 [1st Dept 1997] [internal quotation marks omitted]; see also IRX Therapeutics, 150 AD3d at 447; Aon Risk Servs. v Cusack, 102 AD3d 461, 462 [1st Dept 2013]; L-3 Communications, 45 AD3d at 9).
Although plaintiff had not actually threatened litigation before defendants sued it in Texas, defendants could readily infer from plaintiff's March 28, 2022 letter that it would sue if they did not pay liquidated damages in the amount of $2.3 million. Plaintiff did not have to show them a draft complaint (see Aon Risks Servs., 102 AD3d at 462). Furthermore, it is suspicious that defendants did not immediately serve their petition on plaintiff; instead, they sent a letter suggesting settlement talks, and they said nothing about their lawsuit during those talks. It was only after settlement talks failed that they served their petition. Under these circumstances, it appears that "the [Texas] action was filed . . . to enforce [defendants'] choice of forum if the ensuing settlement negotiations proved unavailing" (White Light, 231 AD2d at 100).
The motion court also providently exercised its discretion by refusing to stay the New York action pursuant to CPLR 2201 (see e.g. Trinity Prods., Inc. v Burgess Steel LLC, 18 AD3d 318, 319 [1st Dept 2005]).
We have considered defendants' remaining arguments, including that the court misinterpreted the exclusivity provision, and find that they do not warrant affirmative relief to defendants.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 2, 2024

Footnotes

Footnote 1: Defendants make a conclusory, one-sentence assertion in their opening appellate brief that plaintiff waived its rights under the exclusivity provision subsequent to September 26, 2021. However, even if defendants are deemed to have preserved a contention of waiver at oral argument before the motion court, that contention is insufficiently elaborated in defendants' opening appellate brief to provide a basis for relief upon appeal. In any event, we find that, on the present record, no triable issue as to waiver exists.